UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

ROLAND MARSHALL HAYES,

                    Petitioner,

v.                                    Case No. 3:03-cv-990-J-20MCR

JAMES V. CROSBY, JR., et al.,

                    Respondents.

_____

## ORDER

### I. Status

Petitioner, an inmate of the Florida penal system who is proceeding *pro se*, initiated this action by filing a Petition (Doc. #1) for writ of habeas corpus pursuant to 28 U.S.C. § 2254 on November 20, 2003. He challenges his February 4, 2000, state court (Duval County) conviction for sale of cocaine within 1,000 feet of a church on the following grounds: (1) the trial court fundamentally erred in advising the jury that a defendant who does not testify does so to avoid incriminating himself; (2) the trial court erred in denying Petitioner's motion for a mistrial when the state argued that the jury should return a verdict that recognizes the truth; (3) the trial court erred in failing to advise the Petitioner that, if he discharged his original counsel, the state would not be required to appoint substitute counsel; (4) counsel was ineffective for failing to argue that there was tampering with physical evidence; (5) counsel was ineffective for failing to

object when the trial court did not place prospective jurors under oath prior to voir dire; (6) counsel was ineffective for failing to object and move for a mistrial when Detective Clausen testified about his prior contacts with Petitioner; (7) counsel was ineffective for failing to ensure that the Petitioner was present during the deposition of Detective Clausen; and, (8) counsel was ineffective for failing to file a timely motion to suppress Petitioner's statement.

On May 24, 2004, Respondents filed an Amended Answer to Petition for Writ of Habeas Corpus (Doc. #14) (hereinafter Response). Petitioner's Reply to Respondents' Amended Answer to Petition for Writ of Habeas Corpus (Doc. #16) was filed on June 9, 2004. This case is now ripe for review.

## II. Relevant Procedural History

On August 13, 1999, Petitioner was charged by information with one count of sale of cocaine within 1,000 feet of a church. Ex.[1] A at 8. On January 12, 2000, after a trial by jury, Petitioner was found guilty as charged. Id. at 39. On February 4, 2000, the trial court adjudicated Petitioner guilty of this offense and sentenced him as a habitual felony offender to twenty-four years of imprisonment. Id. at 54-63.

---

[1] The Court hereinafter refers to the exhibits that were submitted with the Respondents' initial Answer to Petition for Writ of Habeas Corpus (Doc. #10), filed March 12, 2004, as "Ex."

On appeal, Petitioner raised the following claims: (1) the trial court fundamentally erred in advising the jury that a defendant who does not testify does so to avoid incriminating himself; (2) the trial court erred in denying Petitioner's motion for a mistrial when the state argued that the jury should return a verdict that recognizes the truth; and, (3) the trial court erred in advising the Petitioner that, if he discharged his original attorney, the state would not be required to appoint substitute counsel. Ex. B.  On March 1, 2001, the First District Court of Appeal per curiam affirmed the judgment of conviction, without issuing a written opinion. Hayes v. State, 782 So.2d 387 (Fla. 1st DCA 2001) (unpublished table decision).  The mandate issued on March 19, 2001.  Ex. E.

On November 14, 2001, Petitioner filed a motion for post-conviction relief pursuant to Fla. R. Crim. P. 3.850.  Ex. F at 1-32.  Thereafter, he filed a supplement to the motion.  Id. at 33-53.  Therein, he raised the same ineffectiveness claims that are presented in the Petition before this Court.  On October 29, 2002, the trial court denied the motion, as amended.  Id. at 54-60.

Petitioner appealed the trial court's order.  Id. at 308-09. On July 30, 2003, the First District Court of Appeal per curiam affirmed the trial court's order, without issuing a written opinion.  Hayes v. State, 852 So.2d 235 (Fla. 1st DCA 2003)

(unpublished table decision).  The mandate issued on August 26, 2003.  Ex. G.

In October of 2001, Petitioner filed petition for writ of habeas corpus in the First District Court of Appeal.  Ex. H.  The court summarily denied the petition on December 3, 2001.  Hayes v. State, 801 So.2d 925 (Fla. 1st DCA 2001) (unpublished table decision).

Respondents contend that this action was timely filed. Response at 2.  This Court agrees.

### III.  Evidentiary Hearing

A habeas corpus petitioner is entitled to an evidentiary hearing in federal court if he alleges facts which, if proven, would entitle him to habeas corpus relief.  Smith v. Singletary, 170 F.3d 1051, 1053-54 (11th Cir. 1999) (citation omitted); Cave v. Singletary, 971 F.2d 1513, 1516 (11th Cir. 1992) (citing Townsend v. Sain, 372 U.S. 293 (1963)).  Here, the pertinent facts of the case are fully developed in the record before the Court.  Smith, 170 F.3d at 1054 (stating that a district court does not need to conduct an evidentiary hearing "if it can be conclusively determined from the record that the petitioner was not denied effective assistance of counsel").  No evidentiary proceedings are required in this Court.  See High v. Head, 209 F.3d 1257, 1263 (11th Cir. 2000) (citing McCleskey v. Zant, 499 U.S. 467, 494 (1991)), cert. denied, 532 U.S. 909 (2001).  The Court can

4

"adequately assess [Petitioner's] claim[s] without further factual development." Turner v. Crosby, 339 F.3d 1247, 1275 (11th Cir. 2003), cert. denied, 541 U.S. 1034 (2004).   Therefore, for the reasons set forth above, an evidentiary hearing will not be conducted by this Court.

### IV.  Standard of Review

On April 24, 1996, the President signed into law the Antiterrorism and Effective Death Penalty Act of 1996, Pub.L. 104-132, 110 Stat. 1214 (hereinafter AEDPA).   Since this action was filed after the effective date of AEDPA, the Court will analyze Petitioner's claim under 28 U.S.C. § 2254(d), as amended by AEDPA. Nelson v. Alabama, 292 F.3d 1291, 1294-95 (11th Cir. 2002), cert. denied, 538 U.S. 926 (2003); Fugate v. Head, 261 F.3d 1206, 1215 n.10 (11th Cir. 2001), cert. denied, 535 U.S. 1104 (2002); Wilcox v. Florida Dep't of Corr., 158 F.3d 1209, 1210 (11th Cir. 1998), cert. denied, 531 U.S. 840 (2000).

The Eleventh Circuit has described the standard of review under AEDPA and has explained:

> The Anti-Terrorism and Effective Death Penalty Act of 1996 (AEDPA) governs this [action] and limits our review of the decisions of the state courts:
>
> > A federal court may not grant a petition for a writ of habeas corpus to a state prisoner on any claim that has been adjudicated on the merits in state court unless the adjudication (1) resulted in a decision that was contrary to, or

involved an unreasonable application
of clearly established federal law,
or (2) resulted in a decision that
was based on an unreasonable
determination of the facts in light
of the evidence presented in state
court.

Clark v. Crosby, 335 F.3d 1303, 1307-08 (11th
Cir. 2003) (citations omitted). A general
framework of substantial deference governs our
review of every issue that the state courts
have decided:

[A] state-court decision can be
"contrary to" this Court's clearly
established precedent in two ways.
First, a state-court decision
is contrary to this Court's precedent
if the state court arrives at a
conclusion opposite to that reached
by this Court on a question of law.
Second, a state-court decision is
also contrary to this Court's
precedent if the state court
confronts facts that are materially
indistinguishable from a relevant
Supreme Court precedent and arrives
at a result opposite to ours.

.  .  .  .

[A] state-court decision can
involve an "unreasonable
application" of this Court's clearly
established precedent in two ways.
First, a state-court decision
involves an unreasonable application
of this Court's precedent if the
state court identifies the correct
governing legal rule from this
Court's cases but unreasonably
applies it to the facts of the
particular state prisoner's case.
Second, a state court decision also
involves an unreasonable application
of this Court's precedent if the
state court either unreasonably

6

> extends a legal principle from our
> precedent to a new context where it
> should not apply or unreasonably
> refuses to extend that principle to
> a new context where it should apply.

Williams v. Taylor, 529 U.S. 362, 405-07, 120
S.Ct. 1495, 1519-20, 146 L.Ed.2d 389 (2000).

Diaz v. Sec'y for the Dep't of Corr., 402 F.3d 1136, 1141 (11th
Cir. 2005).

The Eleventh Circuit addressed the application of the
"contrary to" clause in reviewing a state court adjudication:

> In applying the "contrary to" prong of
> AEDPA, we have recognized that where no
> Supreme Court precedent is on point, "we
> cannot say that the state court's conclusion
> . . . is contrary to clearly established
> Federal law as determined by the U.S. Supreme
> Court." McIntyre v. Williams, 216 F.3d 1254,
> 1258 (11th Cir. 2000).

Washington v. Crosby, 324 F.3d 1263, 1265 (11th Cir.), cert.
denied, 540 U.S. 965 (2003).

Under 28 U.S.C. § 2254(d)(2), this Court must determine
whether the state court's adjudication resulted in a decision that
was based on an unreasonable determination of the facts in light of
the evidence presented in the state court proceeding. Furthermore,
AEDPA "also directs that a presumption of correctness be afforded
factual findings of state courts, which may be rebutted only by
clear and convincing evidence. See id. at § 2254(e)(1). This
presumption of correctness applies equally to factual
determinations made by state trial and appellate courts." Bui v.

Haley, 321 F.3d 1304, 1312 (11th Cir. 2003) (footnote omitted) (citing Sumner v. Mata, 449 U.S. 539, 547 (1981)).

Finally, for a state court's resolution of a claim to be an adjudication on the merits, so that the state court's determination will be entitled to deference for purposes of federal habeas corpus review under AEDPA, all that is required is a rejection of the claim on the merits, not an opinion that explains the state court's rationale for such a ruling.  Wright v. Sec'y for the Dep't of Corr., 278 F.3d 1245, 1255 (11th Cir. 2002), cert. denied, 538 U.S. 906 (2003).  See Peoples v. Campbell, 377 F.3d 1208, 1227 (11th Cir. 2004), cert. denied, 125 S.Ct. 2963 (2005).  Thus, to the extent that Petitioner's claims were adjudicated on the merits in the state courts, they must be evaluated under the new § 2254(d).

## V. Relevant Portions of the Record

In Petitioner's brief on direct appeal, Petitioner's appellate counsel summarized the relevant portions of the record as follows:

> Pro se, appellant filed a Petition for Writ of Habeas Corpus complaining that the State had insufficient evidence and that his public defender was not properly representing him. (I-18-20).  Pro se appellant also filed a Motion to Dismiss and Reappoint Counsel in which he complained that his public defender was not adequately representing him. (I-21-23).  The motion was denied. (I-24).
>
> January 4, 2000, appellant filed a pro se Motion to Dismiss and Reappoint Counsel. (I-27-28).  At the hearing held on the motion, appellant reiterated that he was requesting that the court appoint an attorney outside the Public Defender's Office. (I-78).  Appellant

8

indicated he was not asking to represent himself (I-78) or to hire private counsel. (I-79). In response to appellant's claim that the case load of the Public Defender's Office was too heavy and proper time had not been devoted to the case, Mr. Selinger testified he believed he had given sufficient time to appellant's case. He indicated depositions had been taken by a previous attorney and that he had discussed with appellant the testimony of the witnesses in their depositions. (I-82-83). With regards to appellant's claim regarding failure to file pretrial motions, Mr. Selinger indicated he intended to file two motions in limine. (I-84-85). He further indicated that he had visited the crime scene yesterday and taken photographs. (I-85). Mr. Selinger indicated that he planned to view the evidence prior to trial. (I-87). Appellant also complained that the attorney's attitude reflected that he didn't know what was going on. (I-90). Finding that there had been no showing that Mr. Selinger was incompetent, the court denied the motion. (I-95). Appellant continued to complain about being forced to go to trial with the public defender. The record reveals the following:

> THE DEFENDANT: I am being forced to go to trial with the public defender, is that what you are saying?
>
> THE COURT: No, sir. You have -- you can hire anyone else out there that will represent [you].
>
> THE DEFENDANT: I cannot hire a lawyer.
>
> THE COURT: I am not forcing you to do anything, sir, but your options have been explained to you and you may proceed.
>
> THE DEFENDANT: You said that my options have been explained to me and I am saying that I do not wish

to go with the public defender. You are telling me that I do have options.

THE COURT: I have already explained your options. We are not going to go over them again. Your motion is denied.

THE DEFENDANT: I don't want to go with the public defender.

THE COURT: Well, I am sorry. I have explained to you your options.

THE DEFENDANT: My option is, one, the public defender, to represent myself.

THE COURT: I am not going to argue anymore, Mr. Hayes.

THE DEFENDANT: Or appoint me another attorney. I am trying to get something straight. I am not getting a full understanding.

THE COURT: Mr. Hayes, you have got -- I will order a transcript for you.

THE DEFENDANT: Can you explain my options again? Have a good day, Your Honor. God bless you . . . .

THE COURT: Order a transcript. We are not going to expedite it but give it to him in the normal course.

(I-95-97).

Appellant filed two motions in limine. The first motion in limine sought to preclude testimony concerning:

1. Any prior contacts between T. E. Clausen, #5555, and J. M. Beard-Ojla, #5141, and the defendant, including but not limited to, an

alleged incident where T. E. Clausen attempted to purchase cocaine from the defendant.

2.    Any   identification   of   the defendant based upon the alleged prior contacts.

3.    That   J.   M.   Beard-Ojla maintained a file on the defendant based on the alleged prior contact and   showed   Detective   Nixon   a photograph of the defendant from the file,   and   that   Detective   Nixon confirmed that the person in the photograph was the seller.

(I-31-33).

The second motion in limine sought to preclude evidence relating to statements made by appellant:

1.    That   he   (the   defendant) remembers T. E. Clausen and J. M. Beard-Ojia from previous undercover buys but not that specific day;

2.    That he (the defendant) had been using drugs and that he sold to a lot of people;

3.    That he (the defendant) was willing to work with the officers in exchange for not having to go to jail.

(I-35-37).

With respect to the first Motion in Limine,    appellant    argued    that    any identification of appellant by Detective Clausen   would   impermissibly   infer   prior criminal conduct on the part of appellant. (I-102-127).   The parties agreed as to specific questions the State would be allowed to ask in this regard. (II-7-9).  The motion was granted

with respect to the photograph. (I-31, 34; II-14-17).

With respect to the second Motion in Limine, appellant argued that his statement of not recalling a sale to Detective Clausen and Ojala was not relevant and was prejudicial. (I-127-136). The statement was redacted to "I don't remember." (II-17-18).

During voir dire, the court was inquiring as to the presumption of innocence. The record reveals the following:

> THE COURT: Now, the defendant does not have the duty to prove himself innocent. In other words, the defendant has no burden. The only burden in a criminal trial is upon the State to prove this defendant guilty beyond a reasonable doubt. In fact, the defendant -- the defendant does not have to put on any evidence, nor does he have to testify. Does anyone out there want to guess where his right not to put on evidence or testify comes from?

> (No response from prospective jurors.)

> THE COURT: Do we have any takers out there? <u>Does anyone know where this defendant and all defendants in the United States of America get the right not to be a witness against themselves?</u>

> (Prospective juror indicating.)

> THE COURT: All right. We have a gentleman who raised his hand. Mr. Taylor.

> PROSPECTIVE JUROR: Well, I believe he's innocent until proven guilty.

THE COURT: Yes, sir, the presumption of innocence does apply and that's correct. But does anyone know specifically where that right not to testify comes from?

(Prospective jurors indicating.)

THE COURT: All right.

PROSPECTIVE JUROR: <u>Not to incriminate himself, saying it's self-incriminated.</u>

THE COURT: Okay. What you all are working up to is -

PROSPECTIVE JUROR: The Constitution.

PROSPECTIVE JUROR: <u>Constitution, Fifth Amendment.</u>

THE COURT: <u>That's right.</u> Ms. Hewes is right. Does everybody agree that each and every criminal defendant in the United States of America has the right not to testify, guaranteed under the Fifth Amendment of our United States Constitution? Does everybody agree with that?

(Affirmative response from prospective jurors.)

THE COURT: Does that make sense to everybody?

(Affirmative response from prospective jurors.)

THE COURT: Okay. Now, along those lines in many cases the defendant chooses not to testify and not to put on any evidence. If this defendant chooses not to testify,

13

not to take the stand and not to put
on evidence, he has that right under
the Fifth Amendment of the Bill of
Rights and it would be the wrong
thing for anyone to hold that
against him if he exercises that
right.   Does that make sense to
everybody out there?

(Affirmative    response    from
prospective jurors.)

THE COURT: For a juror to hold
it against the defendant if he
chooses not to testify would be
wrong. Does everybody agree?

(Affirmative    response    from
prospective jurors.)

THE COURT: It's not -- it
wouldn't make sense to give someone
a right and then to hold it against
them if they exercise that right.
Does that make sense? Please answer
out loud.

(Affirmative    response    from
prospective jurors.)

THE COURT: So let me just ask
you this hypothetical question: The
State always goes first in every
sense.   They will put on their
evidence first and then they will,
just like on television, they'll say
the State rests so that's the end of
the State's case.   They have the
burden of proving beyond a
reasonable doubt the defendant is
guilty.

Now, the defendant may say at
this point we rest also. We have no
evidence to put on, the defendant
will not testify.  If that happens,
let's just say that when the State
rested, you were not convinced

beyond a reasonable doubt that the defendant was guilty. In other words, you feel the State did not carry their burden and they might have put on some proof but not quite enough to prove beyond a reasonable doubt -- and I'll be giving you further instruction about what is and what is not reasonable doubt. But let's say that you follow my instructions and you feel that the State has not proven the case beyond a reasonable doubt.

Now, if you go back there to the jurors' room and say to yourself or to the others, well, the State didn't quite prove this case beyond a reasonable doubt, but I wanted to hear from the defendant and since he didn't testify, I'm going to vote for guilty. If you do that, then that would be wrong because you would be using his failure to take the stand, which he has the right to choose not to do, against him and using -- adding it to the State's side of the scale where they have to prove beyond a reasonable doubt. That would be unfair and improper. Does that make sense to everyone?

(Affirmative response from prospective jurors.)

THE COURT: Is there anyone out there who would hold it against this defendant if he chooses not to testify? Who would consider it to be evidence or to be added to the State side of the scale? If so, please raise up your hand.

(No response from prospective jurors.)

[Emphasis supplied]. (SR-63-68).

15

Detective Donald Nixon testified that he and Detective Troy Clausen were working undercover on July 21, 1999. (II-53-55). Detective Nixon indicated he saw appellant standing on the side of the road in front of a convenience store. (II-65). Detective Nixon intended to contact him and attempt to purchase some crack cocaine. Detective Clausen also observed the individual because he stated "Yeah, that's Roland Hayes." (II-65) They drove about three blocks away and Detective Clausen got out of the car. Detective Nixon returned to the convenience store and flagged over appellant. He walked up to the truck and asked "What you need?" Detective Nixon said, "I need forty hard." (II-66-67). Detective Nixon gave him forty dollars. He went across the street into a house and then a few minutes later returned to the truck. He handed Detective Nixon two pieces of crack cocaine. (II-68-69). Thereafter, Detective Nixon picked up Detective Clausen and they drove by the convenience store again. Detective Nixon again saw appellant and pointed out him to Detective Clausen as the individual from whom he had bought the drugs. Detective Clausen said, "Yeah, that's Roland Hayes." (II-69-70). Detective Nixon identified State's Exhibit A for Identification as the drugs he had purchased from appellant. (II-76). Detective Nixon indicated that across the street from where the purchase took place was St. Mary's Missionary Baptist Church. He measured the distance between the church and the location of the sale as being sixty-five feet. (II-78-79).

On cross-examination, Detective Nixon acknowledged that a video camera was not utilized in the case. (II-93). He also acknowledged that he had not written a description of the seller on a buy envelope. (II-103-105).

Pastor Larry Brown of St. Mary's Missionary Baptist Church located at 3848 St. Augustine Road, testified that the church was

a place of worship where the congregation regularly met for religious purposes. (II-112-114). He testified that the church was in existence and regularly meeting on July 21, 1999. (II-117).

Glen Abate was accepted as an expert in the field of chemical analysis of controlled substances and narcotics. (II-119-122). He examined State's Exhibit A for Identification and determined it to contain cocaine. (II-122-125).

Detective Clausen testified that he was working undercover on July 21, 1999. (II-153-154). He testified that approximately two weeks prior to July 21, in a non-criminal context, he had met Roland Hayes and spoken to him for a few minutes. (II-156-157). He identified appellant as Roland Hayes. (II-157). Detective Clausen testified that on July 21, 1999, as they were driving down St. Augustine Road, he saw appellant in the parking lot of Safe-Stop Gas Station. (II-157-158). Detective Clausen pointed out appellant by name to Detective Nixon. (II-158). They drove three or four blocks away and Detective Clausen got out of the car. Detective Nixon then left the area. Approximately five minutes later, Detective Nixon returned with two pieces of crack cocaine. (II-159-160). As they drove back towards the gas station, Detective Nixon pointed appellant out as the individual from whom he had bought crack cocaine. Detective Clausen again identified him as Roland Hayes. (II-160-161). When appellant was arrested on July 21, 1999, Detective Clausen questioned him after giving him Miranda rights. (II-162-165). When asked if he remembered selling cocaine on July 21, 1999, appellant's response was, "I don't remember." (II-165).

At the close of the State's case, appellant moved for a judgment of acquittal, which motion was denied. (II-180).

During the State's closing argument, defense counsel objected and moved for mistrial in response to the State's argument that "you can use three very important tools to return a verdict that recognizes the truth." (III-221).   The court denied the motion for mistrial but did give a cautionary instruction:

> Before I send you all out, there was an objection to the comment by the prosecutor that you should all seek the truth or your verdict should reflect the truth.  Let me explain this.  This is a very important distinction.  Your decision, as I've told you numerous times, in this case is only whether or not the State has proven the case beyond and to the exclusion of every reasonable doubt.   In other words, your decision would not be, for example, well, is it maybe true that the defendant did it or is it probably true that he did it or is there a good case that it may be true that he did it or anything of that nature.  Those would be speculative, improper verdicts.  The only truth you're to seek here -- and your question is not whether it is most likely true or false or anything of that nature.  The only truth you're to seek is whether it's true that the State did -- that the State did prove this case beyond a reasonable doubt or not.  So that's the only truth you're to seek the truth of -- the truthful answer to the question did the State prove this case beyond a reasonable doubt or did they not.

(III-224-225).

Ex. B at 2-12.

## VI. Findings of Fact and Conclusions of Law

### A. Grounds One Through Three

As noted previously, Petitioner raises the following claims in grounds one through three: (1) the trial court fundamentally erred in advising the jury that a defendant who does not testify does so to avoid incriminating himself; (2) the trial court erred in denying Petitioner's motion for a mistrial when the state argued that the jury should return a verdict that recognizes the truth; and, (3) the trial court erred in failing to advise the Petitioner that, if he discharged his original counsel, the state would not be required to appoint substitute counsel.

Petitioner raised these three claims on direct appeal. The First District Court of Appeal affirmed Petitioner's judgment of conviction. Thus, these three claims were addressed on the merits by the state appellate court.[2] Accordingly, there are qualifying state court decisions. The Court must next consider the "contrary to" and "unreasonable application" components of the statute. "It is the objective reasonableness, not the correctness per se, of the state court decision that we are to decide." Brown v. Head, 272 F.3d 1308, 1313 (11th Cir. 2001), cert. denied, 537 U.S. 978 (2002).

---

[2] As previously noted, for a state court's resolution of a claim to be an adjudication on the merits, all that is required is a rejection of the claim on the merits, not an opinion that explains the state court's rationale for such a ruling. Wright, 278 F.3d at 1255.

Upon thorough review of the record and the applicable legal precedent, it is clear that Petitioner is not entitled to relief on the basis of these three claims because the state appellate court's adjudication of these claims was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Furthermore, this Court also finds these claims to be without merit for the reasons stated by the Respondents in their Response. See Response at 5-15, 18-22,[3] 24-28.[4]

---

[3] Respondents also contend that ground two is procedurally barred because it was not raised as a federal claim on direct appeal. This Court disagrees that the claim is procedurally barred because Petitioner raises the same claim here that he did on direct appeal (that the trial court erred in denying Petitioner's motion for a mistrial when the state argued that the jury should return a verdict that recognizes the truth). Ground two was raised in state court, and presented in this Petition, as an issue of state law, which is not cognizable in federal habeas proceedings. However, to the extent that this issue could be construed as a prosecutorial misconduct claim, it is without merit for the reasons stated by the Respondents in their response. See Response at 18-22. Thus, the state court's adjudication of this claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings.

[4] Respondents also contend that ground three is procedurally barred because it was not raised as a federal claim on direct appeal. This Court is satisfied that Petitioner exhausted his federal claim on direct appeal.

## B. Grounds Four Through Eight

In grounds four through eight, Petitioner contends that he received ineffective assistance of counsel. As noted previously, the standard of review to be applied is that found in AEDPA. As explained by the Supreme Court of the United States:

> Under 28 U.S.C. § 2254, [Petitioner's] entitlement to federal habeas relief turns on showing that the state court's resolution of his claim of ineffective assistance of counsel under Strickland v. Washington, supra, "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," § 2254(d)(1). An "unreasonable application" occurs when a state court "'identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts' of petitioner's case." Wiggins v. Smith, supra, at 520, 123 S.Ct. 2527 (quoting Williams v. Taylor, 529 U.S. 362, 413, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000) (opinion of O'CONNOR, J.)). That is, "the state court's decision must have been [not only] incorrect or erroneous [but] objectively unreasonable." Wiggins v. Smith, supra, at 520-521, 123 S.Ct. 2527 (quoting Williams v. Taylor, supra, at 409, 120 S.Ct. 1495 (internal quotation marks omitted)).
>
> Ineffective assistance under Strickland is deficient performance by counsel resulting in prejudice, 466 U.S., at 687, 104 S.Ct. 2052, with performance being measured against an "objective standard of reasonableness," id., at 688, 104 S.Ct. 2052, "under prevailing professional norms." Ibid.; Wiggins v. Smith, supra, at 521, 123 S.Ct. 2527.

Rompilla v. Beard, 125 S.Ct. 2456, 2462 (2005).

21

The Eleventh Circuit has expounded upon the deference due to counsel's performance as well as to the state court's decision concerning that performance:

> In assessing [Petitioner's] claim that his trial counsel were ineffective we must keep in mind that "[j]udicial scrutiny of counsel's performance must be highly deferential." Id. at 689, 104 S.Ct. at 2065. In addition to the deference to counsel's performance mandated by Strickland, the AEDPA adds another layer of deference--this one to a state court's decision--when we are considering whether to grant federal habeas relief from a state court's decision. Woodford, 537 U.S. at 24, 123 S.Ct. at 360 (section 2254(d)(1) imposes a "highly deferential standard for evaluating state-court rulings") (internal marks and citation omitted). [Petitioner] must do more than satisfy the Strickland standard. He must also show that in rejecting his ineffective assistance of counsel claim the state court "applied Strickland to the facts of his case in an objectively unreasonable manner." Bell v. Cone, 535 U.S. 685, 699, 122 S.Ct. 1843, 1852, 152 L.Ed.2d 914 (2002).

Rutherford v. Crosby, 385 F.3d 1300, 1309 (11th Cir. 2004), cert. denied, 125 S.Ct. 1847 (2005).

Petitioner contends that counsel was ineffective for failing to: (1) argue that there was tampering with physical evidence; (2) object when the trial court did not place prospective jurors under oath prior to voir dire; (3) object and move for a mistrial when Detective Clausen testified about his prior contacts with Petitioner; (4) ensure that the Petitioner was present during the deposition of Detective Clausen; and, (5) file a timely motion to

22

suppress Petitioner's statement. Petitioner raised these ineffectiveness claims in his Rule 3.850 motion, and the trial court adjudicated them as follows:

> In the instant Motion, Defendant raises six grounds for relief. In ground one, Defendant asserts that counsel rendered ineffective assistance by failing to object to the Court's failure to place the voir dire panel under oath prior to questioning. Initially, this Court notes that in order to prevail on a claim of ineffective assistance of counsel, Defendant must show that: (1) counsel's performance was outside the wide range of reasonable professional assistance, and (2) counsel's deficient performance prejudiced the defense, *i.e.,* that there is a reasonable probability that the outcome of the proceeding would have been different absent counsel's deficient performance. <u>Strickland v. Washington</u>, 466 U.S. 668, 687 (1984); <u>Cherry v. State</u>, 659 So.2d 1069 (Fla. 1995); <u>Knight v. State</u>, 394 So.2d 997 (Fla. 1981); <u>Reaves v. State</u>, 593 So.2d 1150 (Fla. 1st DCA 1992). Further, the "standard is reasonably effective counsel, not perfect or error-free counsel." <u>Coleman v. State</u>, 718 So.2d 827, 829 (Fla. 4th DCA 1998). Prejudice is demonstrated if the deficiency was sufficient to render the result unreliable. <u>Gorham v. State</u>, 521 So.2d 1067 (Fla. 1988).
>
> The First District Court of Appeal has recently addressed such a claim in <u>Lott v. State</u>, 27 Fla. L. Weekly D2038 (Fla. 1st DCA September 12, 2002). In <u>Lott</u>, the Court stated:
>
> > [t]he defendant is unable to show prejudice arising from his counsel's silence in the face of the trial court's failure to administer the oath, because he can not show that the results of the proceeding would have been different had counsel objected. He does not claim, for

example, that an unsworn juror
provided false information and that
the defendant would likely have
prevailed at trial with a different
juror.

Id. In the instant case, Defendant has failed
to establish error on the part of counsel or
prejudice to his case. Strickland.
Therefore, the Defendant's claim is without
merit.

In ground two, Defendant asserts that
counsel rendered ineffective assistance by
failing to object to Detective Clausen's
testimony regarding his occupation and about
seeing Defendant in the community from prior
contacts. This Court notes that counsel filed
a Motion in Limine to prevent Detectives
Clausen and Beard-Ojala from testifying about
any prior contact with Defendant based upon
Edwards v. State, 583 So.2d 740 (Fla. 1st DCA
1991), State v. Price, 701 So.2d 1204 (Fla. 3d
DCA 1997) and Hardie v. State, 513 So.2d 791
(Fla. 4th DCA 1987), cases relied upon by
Defendant in his Motion, and the Court
partially granted counsel's Motion but allowed
the Detectives to testify regarding their
occupations and to testify that they were
familiar with Defendant in a noncriminal
nature. (Defendant's Motion, page 17-19;
Exhibits "C," pages 7-9; "D" pages 5-39.)
Additionally, this Court notes that Detective
Clausen's occupation was relevant to the
instant case since Detective Clausen
interviewed Defendant regarding the charged
offense. (Exhibit "C," pages 153-165.)
Therefore, this Court finds that his testimony
was not presented solely for the purpose of
identifying Defendant as the person who sold
drugs to Detective Nixon. Further, pursuant
to the Motion in Limine, this Court notes that
Detective Clausen testified that he recognized
Defendant from previous contact that was not
of a criminal nature. (Exhibit "C," page
156.) Therefore, this Court finds that any
inference of possible past criminal activity
was negated by Detective Clausen's

clarification regarding the nature of the previous encounter with Defendant. Accordingly, this Court finds that Defendant has failed to establish error by counsel or prejudice to his case.

In ground three, Defendant asserts two separate sub-claims premised upon grounds of ineffective assistance of counsel. In sub-claim one, Defendant alleges that counsel rendered ineffective assistance by waiving Defendant's presence at the deposition of Detective Clausen after he expressly told his attorneys that he wished to be present relying upon Florida Rule of Criminal Procedure 3.190(j). This Court notes that Florida Rule of Criminal Procedure 3.190(j) pertains to securing testimony from witnesses who may be unavailable for trial. This Court notes that Detective Clausen was available for trial and in fact, testified during trial. Therefore, this Court finds that Florida Rule of Criminal Procedure 3.190(j) does not apply since the deposition was not meant to perpetuate his testimony. Assuming arguendo that Florida Rule of Criminal Procedure 3.190(j) did apply to Defendant, this Court notes that Defendant's right to confrontation and cross-examination was not impeded by his nonattendance at the deposition since Detective Clausen testified at trial and was subject to cross-examination. (Exhibit "C," pages 129-176.) Additionally, this Court notes that Detective Clausen's deposition would only be admissible for impeachment purposes pursuant to Florida Rule of Criminal Procedure 3.190(j). State v. Basiliere, 353 So.2d 820 (Fla. 1978); State v. Dolen, 390 So.2d 407 (Fla. 5th DCA 1980). Accordingly, this Court finds that Defendant has failed to establish error by counsel or prejudice to his case.

In sub-claim two, Defendant alleges that counsel rendered ineffective assistance by failing to ask Detective Clausen why he was lying during his trial testimony. This Court notes that Detective Nixon specifically

identified the Defendant as the person who
sold him two pieces of cocaine for $40.
(Exhibit "C," pages 55-71). Accordingly, this
Court finds that Defendant failed to establish
there was a reasonable probability that a jury
would have acquitted him if counsel had
questioned Detective Clausen about lying.

In ground four, Defendant asserts that
counsel rendered ineffective assistance by
filing an untimely Motion to Suppress
Defendant's prior statement and by opening the
door to the statement during closing
arguments. This Court notes that counsel
filed a Motion in Limine to prevent the State
from presenting testimony regarding
Defendant's statement about his not
remembering selling drugs to Detective Nixon
on the day of the charged offense and the
Court denied the Motion in part by stating
that the State could present Defendant's
statement of not remembering generally and
granted the Motion in part by not allowing the
State to present the specifics of the
statement. (Exhibit "C," pages 17-18, "D,"
pages 29-39.) Upon review of the record, this
Court notes that the State asked Detective
Clausen if Defendant made any statements
regarding selling cocaine to Detective Nixon
and Detective Clausen gave the approved answer
of "I don't remember." (Exhibit "C," page
165.) Additionally, this Court notes that
counsel, during closing arguments, discussed
with the jury that the Court approved [the]
statement "I don't remember" was not a
confession but instead a denial of the charged
offense. (Exhibit "C," page 212, 251-252.)
Further, during the State's closing argument,
the State argued that the Court approved [the]
statement "I don't remember" was tantamount to
a confession of the charged offense. (Exhibit
"C," pages 230, 247.) Upon further review of
the trial transcripts, this Court finds that
there was no violation of the Motion in Limine
regarding Defendant's statement to Detective
Clausen about whether or not he remembered
selling drugs to Detective Nixon on the day of
the charged offense. Further, based upon the

Court's ruling on the Motion in Limine,
Defendant has failed to establish any
prejudice during the trial since the jury was
only permitted to hear that he did not
remember selling drugs. (Exhibit "D," pages
5-39.) Accordingly, this Court finds that
Defendant has failed to establish error by
counsel or prejudice to his case.

. . . .

In ground six, Defendant asserts that
counsel rendered ineffective assistance by
failing to file a Motion to Strike the
testimony of the chemist; failing to argue
"mere indication of probable tampering with
physical evidence;" failing to argue a lack of
sufficient chain of custody and failing to
argue these grounds during the Motion for
Judgment of Acquittal. This Court finds
Defendant's claim is without merit. Detective
Nixon testified that he took the cocaine from
Defendant, placed the cocaine into a baggie
and placed the baggie into the property room.
(Exhibit "C," pages 69-73, 106-107.)
Detective Nixon continued to testify that he
placed a seal over the opening of the baggie
with his initials and an identification number
before placing it in the property room and
identified the baggie at trial as being the
baggie he placed in the property room.
(Exhibit "C," pages 74-77.) Detective Nixon
then testified that the baggie was in
substantially the same condition as when he
placed it in the property room and explained
to the jury that the cocaine in the baggie was
in a more powder form since cocaine is a
fragile substance that is easily broken during
shipping. (Exhibit "C," page 77.)
Additionally, this Court notes that counsel
cross-examined Detective Nixon regarding the
possibility of mixing up evidence and
Detective Nixon testified that it was not
possible. (Exhibit "C," pages 89-91).
Further, George Abate testified that the seal
on the baggie had not been tampered with prior
to his opening of the baggie and he resealed
the baggie with his initials upon completion

27

of testing the substance inside and he
testified that the baggie was in substantially
the same condition as when he had it last.
(Exhibit "C," pages 123-126.) Moreover, this
Court notes that counsel did not object to the
condition of the cocaine prior to it being
placed into evidence. (Exhibit "C," page
127.) Based upon the above testimony, this
Court finds that the chain of custody of the
cocaine was sufficiently established and that
Defendant presented no evidence that the
cocaine could have been damaged in transit to
the Florida Department of Law Enforcement.

Finally, with regard to Defendant['s]
claim that counsel rendered ineffective
assistance by failing to argue the above
during the Judgment of Acquittal argument,
this Court notes that the Florida Supreme
Court has said the following in reference to
motions for judgment of acquittal:

> [a] defendant, in moving for a
> judgment of acquittal, admits not
> only the facts stated in the
> evidence adduced, but also admits
> every conclusion favorable to the
> adverse party that a jury might
> fairly and reasonably infer from the
> evidence. The courts should not
> grant a motion for judgment of
> acquittal unless the evidence is
> such that no view which the jury may
> lawfully take of it favorable to the
> opposite party can be sustained
> under the law. Where there is room
> for a difference of opinion between
> reasonable men as to the proof or
> facts from which an ultimate fact is
> sought to be established, or where
> there is room for such differences
> as to the inferences which might be
> drawn from conceded facts, the Court
> should submit the case to the jury
> for their finding, as it is their
> conclusion, in such cases, that
> should prevail and not primarily the
> views of the judge. The credibility

28

and probative force of conflicting
testimony should not be determined
on a motion for judgment of
acquittal. <u>Lynch v. State</u>, 293
So.2d 44 (Fla. 1974).

Applying the above reasoning to the facts
of the present case, Defendant's claim that
counsel should have argued that there was no
chain of custody for the cocaine and the
possibility of evidence tampering is
meritless. There was sufficient evidence
presented to establish a chain of custody for
the cocaine and an explanation for its
different form. (Exhibit "C," pages 69-73,
74-77, 89-91, 106-107, 123-126, 127.)
Accordingly, the evidence presented warranted
the issue going to the jury. Therefore, there
is no reasonable probability that, had counsel
argued as Defendant suggests in his Motion for
Judgment of Acquittal, such Motion would have
been granted and Defendant would have been
acquitted. Defendant has failed to establish
that he was prejudiced by the alleged errors
of counsel.

Ex. F at 54-60.

The First District Court of Appeal affirmed the trial court's

adjudication of these claims. Thus, there are qualifying state

court decisions from both the state trial and appellate courts.

Upon thorough review of the record and the applicable legal

precedent, it is clear that Petitioner is not entitled to relief on

the basis of these claims because the state courts' adjudications

of these claims were not contrary to clearly established federal

law, did not involve an unreasonable application of clearly

established federal law, and were not based on an unreasonable

determination of the facts in light of the evidence presented in the state court proceedings.

Any claims not specifically addressed herein are without merit. Thus, for all of the above-stated reasons, the Petition will be denied, and this case will be dismissed with prejudice.

Therefore, it is now

**ORDERED AND ADJUDGED:**

1. The Petition is **DENIED**, and this action is **DISMISSED WITH PREJUDICE.**

2. The Clerk of the Court shall enter judgment denying the Petition and dismissing this case with prejudice.

3. The Clerk of the Court shall close this case.

**DONE AND ORDERED** at Jacksonville, Florida, this 26I day of October, 2005.

_____
UNITED STATES DISTRICT JUDGE

ps 10/24
c:
Roland Marshall Hayes
Ass't Attorney General Daniel A. David